UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 2:17-CV-14335-SMM

HOWARD MASON MELTON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

FILED by _____ D.C.

SEP 27 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [D.E. 10 & 11]

**THIS CAUSE** comes before the Court upon the above-referenced Motions. On November 11, 2013, at the age of fifty-one, Mr. Howard Mason Melton ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act. The claim was initially denied on March 27, 2014, and upon reconsideration on May 13, 2014. Following a hearing, Administrative Law Judge Mattie Harvin-Woode ("ALJ") found that Plaintiff was not disabled. In this appeal, Plaintiff argues that the ALJ failed to resolve a conflict between the vocational expert's testimony that a hypothetical person with Plaintiff's residual functional capacity ("RFC") could reach overhead only occasionally, while the jobs identified by the vocational expert that Plaintiff can perform require frequent reaching. Following a review of each Motion and respective briefings, the administrative record, and having held a telephonic hearing on July 24, 2018, this Court finds no error in the ALJ's decision. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment, [D.E. 10], is denied and Defendant's Motion for Summary Judgment, [D.E. 11] is granted.

**BACKGROUND**

The Social Security Regulations outline a five-step sequential evaluation process used to determine whether a claimant is disabled. At a hearing held on June 16, 2015, the ALJ analyzed Plaintiff's disability following the five-step sequential evaluation process outlined in 20 C.F.R. § 416.920(a)(4)[1]. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 15, 2012, the alleged onset date of disability. At step two, the ALJ found that Plaintiff had severe impairments, including cervical degenerative disc disease; cervical post-laminectomy syndrome; right levator scapula enthesopathy; mild right shoulder degenerative joint disease; bilateral carpal tunnel status post release; obesity; pain disorder; asthma; and status post arterial aneurysm repair with stent.

After finding in step three that Plaintiff's impairments did not meet the criteria for one of the listed impairments, the ALJ assessed his RFC in step four. According to the ALJ, Plaintiff has the RFC to perform light worked as defined in 20 C.F.R. § 404.1567(b)[2]. However, Plaintiff can occasionally stoop, crawl, crouch, and climb ramps and stairs. Plaintiff should avoid climbing ladders, ropes, and scaffolds. Plaintiff can occasionally reach overhead, but Plaintiff can frequently reach in all other directions. Plaintiff should avoid concentrated exposure to

---

[1] The ALJ must determine (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the claimant's impairment, or combination of impairments, meet a listed impairment; (4) whether the claimant's residual functional capacity precludes his ability to perform past relevant work; and, if not, (5) whether his RFC precludes the claimant from performing any other work available in the national economy. *See* 20 C.F.R. § 404.1520(a)-(g).

[2] Pursuant to 20 C.F.R. § 404.1567:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

extreme cold, vibrations, fumes, odors, dusts, gases, and hazards. He requires an option to sit every forty-five minutes for one minute to alleviate discomfort, but is able to continue working while sitting. Based on Plaintiff's RFC, the ALJ concluded that Plaintiff is unable to perform any past relevant work and continued to step five.

The parties dispute the ALJ's findings at step five. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work. The ALJ must determine whether a significant numbers of jobs exist in the national economy that the claimant could perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239–40 (11th Cir. 2004). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002) (per curiam). Here, the ALJ posed a hypothetical question to the vocational expert that included all of Plaintiff's impairments. According to the vocational expert, a hypothetical person with Plaintiff's RFC could perform work in the national economy, specifically the positions of Cashier II (DOT # 211.462-010), Information Clerk (DOT # 237.367-018), and Ticket Taker (DOT # 344.667-010). The ALJ asked the vocational expert if her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). [R. 81]. The vocational expert referred back to her previous testimony in which she indicated that the DOT jobs identified do not address overhead reaching. [R. 78-79, 81]. Based on the existence of jobs at significant numbers in the national economy

that Plaintiff could perform, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.

## STANDARD OF REVIEW

This Court reviews "the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *McGill v. Comm'r of Soc. Sec.*, 682 F. App'x 738, 740 (11th Cir. 2017). "Substantial evidence" is more than a scintilla, but less than a preponderance, and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).

While this Court's review of the Commissioner's factual findings is limited to the standard outlined *supra*, the Commissioner's legal conclusions enjoy no such deference, and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991); *see Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## DISCUSSION

Plaintiff argues the ALJ erred at step five of the analysis by failing to resolve a conflict between the vocational expert's testimony that a person with Plaintiff's RFC could perform jobs requiring frequent[3] reaching, where Plaintiff's RFC limits him to overhead reaching only occasionally[4]. Defendant asserts that the ALJ did not err because the vocational expert's testimony was not in conflict with the DOT, which does not distinguish between "overhead reaching" and "reaching" generally. At issue is whether the vocational expert's testimony constitutes substantial evidence to support the ALJ's step five finding in light of this alleged conflict. This Court conducts an independent review of the record when determining whether the ALJ's decision is supported by substantial evidence. Following a review of the guiding authority, the Court concludes that the ALJ did not err in relying on the vocational expert's opinion because there was no "apparent unresolved conflict"[5] between the vocational expert's testimony and the DOT. The DOT job listings are silent about overhead reaching. Moreover, under Eleventh Circuit case law, an ALJ has discretion to give more weight to a vocational expert's testimony. Accordingly, the ALJ's decision is affirmed.

**I.     The vocational expert's testimony and the DOT do not present an apparent unresolved conflict.**

The vocational expert's testimony was not in apparent conflict with the DOT. Pursuant to Social Security Regulation 00-4p, an administrator has an affirmative obligation to inquire about conflicts between a vocational expert's testimony and information provided in the DOT. Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist

---

[3] "Frequent" means occurring from one-third to two-thirds of the time. *See* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983) (defining "frequent").

[4] "Occasionally" means occurring from very little up to one-third of the time. *See* SSR 83- 10, 1983 WL 31251 (Jan. 1, 1983) (defining "occasionally").

[5] *See* SSR 00-4p.

Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4p, 2000 WL 1898704, (S.S.A. Dec. 4, 2000). "When there is an apparent unresolved conflict between the [vocational expert's]…evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert's]…evidence to support a determination or decision about whether the claimant is disabled." *Id.* To be in compliance with SSR 00-4p, "the adjudicator will inquire, on the record, as to whether or not there is such consistency." *Id.* According to Plaintiff, the ALJ committed reversible error by finding that Plaintiff could perform the positions of Cashier II, Information Clerk, and Ticket Taker despite the RFC limiting Plaintiff to occasional overhead reaching because those positions all require frequent reaching according to the DOT. Defendant counters that no apparent conflict exists where the DOT is silent about overhead reaching and does not distinguish between overhead reaching and reaching generally. Plaintiff's argument misapplies the jurisprudence and the regulatory authority on conflicts between vocational expert authority and the DOT in several key ways.

First, where the vocational expert testifies on a matter that is not explicitly inconsistent with the DOT, no conflict exists. *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012). *See also Razor v. Comm'r of Soc. Sec.*, 2013 WL 5854575, at *6 (M.D. Fla. Oct. 30, 2013) (finding that no conflict existed between the vocational expert testimony and the DOT where the DOT is silent) (citing *Lusk v. Astrue*, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013). As the Northern District of Florida has explained, in the Eleventh Circuit, a "'conflict' generally arises when the [vocational expert] testifies to a matter that is contradicted by information in the DOT." *Terwilliger v. Colvin*, 2013 WL 2251563, at *12 (N.D. Fla. May 21, 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999)). Where the DOT is simply

silent on an issue, there is no direct conflict between the testimony of the vocational expert and the DOT. *Id.* Here, the vocational expert's testimony that a person with Plaintiff's RFC could work as a Cashier II, Ticket Taker or Information Clerk (all of which require frequent reaching according to the DOT) was not in direct conflict with the DOT because the DOT is silent on the issue of overhead reaching. As in *Terwilliger*, the vocational expert's testimony was not inconsistent with the DOT because the DOT does not specify with what frequency those positions require overhead reaching as opposed to reaching in other directions.

The Ninth Circuit has recognized that for an apparent conflict to exist it must be obvious or apparent to the fact finder. *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). "This means that the testimony must be at odds with the [DOT] listing of job requirements that are essential, integral, or expected." *Id.* An ALJ is not "free to disregard the Dictionary's definitions or take them with a grain of salt." *Id.* But, "where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id.* In this matter, the first job identified by the vocational expert was Cashier II. *See* Cashier II, DOT, No. 211.462-010, 1991 WL 671840 (4th ed. 1991). The question of whether cashiering requires overhead reaching was at issue in *Gutierrez*. That Court found no obvious or apparent conflict between the DOT and a vocational expert's testimony that a plaintiff limited to occasional overhead reaching could work as a cashier. 844 F.3d at 807. As the Court observed, "anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to." *Id.*

The position of Cashier II at issue here also does not plainly require overhead reaching. According to the DOT, a Cashier II performs the following tasks:

> Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized

> lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. May be designated according to nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier, Parking Lot (automotive ser.); Dining-Room Cashier (hotel & rest.); Service-Bar Cashier (hotel & rest.); Store Cashier (clerical); or according to type of account as Cashier, Credit (clerical); Cashier, Payments Received (clerical). May press numeric keys of computer corresponding to gasoline pump to reset meter on pump and to record amount of sale and be designated Cashier, Self-Service Gasoline (automotive ser.). May receive money, make change, and cash checks for sales personnel on same floor and be designated Floor Cashier (clerical). May make change for patrons at places of amusement other than gambling establishments and be designated Change-Booth Cashier (amuse. & rec.).

There is nothing in this description that makes it obvious or apparent that a person working as a Cashier II has to reach overhead more than incidentally to perform this job.

Similarly, the other two jobs presented by the vocational expert do not obviously require more than occasional overhead reaching. The second job that the vocational expert identified was Information Clerk. The DOT description for the position of Information Clerk describes the tasks performed as follows:

> Provides travel information for bus or train patrons: Answers inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains. Describes routes, services, and accommodations available. Furnishes patrons with timetables and travel literature. Computes and quotes rates for interline trips, group tours, and special discounts for children and military personnel, using rate tables.

*See* Information Clerk, DOT, No. 237.367-018, 1991 WL 672187. The description of this position, which largely requires conveying information, would not make it obvious or apparent that a person would have to reach overhead more than incidentally to perform this job.

The third positon identified by the vocational expert, a Ticket Taker, is described in the DOT as a person who:

> Collects admission tickets and passes from patrons at entertainment events: Examines ticket or pass to verify authenticity, using criteria such as color and date issued. Refuses admittance to patrons without ticket or pass, or who are undesirable for reasons, such as intoxication or improper attire. May direct patrons to their seats. May distribute door checks to patrons temporarily leaving establishment. May count and record number of tickets collected. May issue and collect completed release forms for hazardous events, and photograph patron with release form for permanent records file. May be designated Gate Attendant (amuse. & rec.) or Turnstile Attendant (amuse. & rec.) when collecting tickets at open-air event.

*See* Ticket Taker, DOT, No. 344.667-010, 1991 WL 672863. Again, nothing about this job description makes it apparent or obvious that a person performing the role of Ticket Taker would have to reach overhead more than occasionally. As the descriptions provided in the DOT do not make it apparent or obvious that these jobs require more than occasional or incidental overhead reaching, there was no apparent conflict for the ALJ to resolve.

Noting that this is an issue of first impression in the Eleventh Circuit, Plaintiff requests that this Court follow the analysis in *Moore v. Colvin*, 769 F.3d 987 (8th Cir. 2014) and *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014). *See Moore,* 769 F.3d at 989 (vacating and remanding where the plaintiff could reach overhead only occasionally but the vocational expert testified that plaintiff could perform janitorial work, which required frequent reaching); *Kemp*, 743 F.3d at 632 (vacating and remanding the ALJ's decision when the plaintiff's RFC limited him to occasional overhead reaching, but the vocational expert testified that the plaintiff could work as a check weigher, which requires frequent reaching according to the DOT). This Court, however, finds the rationale in *Gutierrez* more persuasive. As explained in *Guitierrez*, "not every job that involves reaching requires the ability to reach overhead." 844 F.3d 808. As demonstrated *supra*, the positions of Cashier II, Information Clerk, and Ticket Taker, as

described by the DOT, are not of a type where overhead reaching is so fundamental to the position that a conflict would be obvious or apparent to the ALJ.

Plaintiff's failure to object to the vocational expert's testimony is another reason any conflict cannot be characterized as apparent or obvious. Where a Plaintiff does not offer any evidence controverting the vocational expert's testimony and does not object, the ALJ does not err in relying on the vocational expert's testimony. *Leigh*, 496 F. App'x at 975; *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795 (11th Cir. 2011). An objection to the vocational expert's testimony would have put the ALJ on notice of a potential conflict. In this case, no objection was made, Plaintiff's counsel did not point out any inconsistencies, and the ALJ had only the vocational expert's testimony on which to rely. Having not brought any conflict to the ALJ's attention, Plaintiff cannot now claim a conflict was so obvious or apparent that the ALJ should have known of it and addressed it under SSR 00-4p.

## II. Even if a conflict existed, the ALJ has discretion to credit the vocational expert's testimony over the DOT under Eleventh Circuit case law.

Even assuming that an inconsistency existed between the vocational expert's testimony and the DOT, Eleventh Circuit precedent dictates that an ALJ may rely on the vocational expert's testimony over the DOT without resolving the conflict. Prior to the promulgation of SSR 00–4p, the Eleventh Circuit held that when the vocational expert's testimony conflicts with the DOT, the vocational expert's testimony "trumps" the DOT "because the DOT is 'not the sole source of admissible information concerning jobs.'" *Jones*, 190 F.3d at 1229–30 (quoting *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir.1994)). The plaintiff in *Jones* argued that the ALJ's reliance on the vocational expert's testimony was improper because some of the jobs identified by the vocational expert conflicted with the DOT. *Jones*, 190 F.3d at 1229. After analyzing approaches taken in other circuits, the Court determined that an ALJ may credit vocational

expert testimony over the DOT. *Id.* The rationale was that by the Social Security Administration's own admission, the DOT is not a dispositive source for providing all occupational information. *Id.* Rather, the vocational expert is the best source to supplement DOT data with information and details about jobs in the regional area. *Jones*, 190 F.3d at 1230. Accordingly, pursuant to *Jones*, an ALJ may rely solely upon vocational expert testimony even where there is a conflict with the DOT.

*Jones* remains governing authority in the Eleventh Circuit. *See Terwilliger*, 2013 WL 2251563, at *12. Following the promulgation of SSR 00–4p, the Eleventh Circuit affirmed *Jones*' holding in *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007). According to the claimant in *Miller* SSR 00–4p, which was published after *Jones*, dictated that "where a conflict exists between the DOT and the testimony of a vocational expert, neither automatically trumps the other," and the ALJ must "elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or a decision about whether the claimant is disabled." *Id.* at 661–62. The claimant asserted that SSR 00-4p should govern instead of the Eleventh Circuit's prior holding in *Jones*. However, the *Miller* Court concluded that "agency rulings do not bind this Court." *Id.* (quoting *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B Apr.1981)). Other decisions following *Jones* and *Miller* have confirmed that where a conflict exists, the vocational expert's testimony outweighs the DOT. *See Hurtado*, 425 F. App'x at 795. As such, *Jones* is still good law and the testimony of a vocational expert can "trump" an inconsistent provision in the DOT. *See Jones*, 190 F.3d at 1229–30.

Pursuant to *Jones* and *Miller* the ALJ did not err in relying on the vocational expert's testimony as substantial evidence that Plaintiff could perform other work in the national

economy. The ALJ was not required under Eleventh Circuit case law to resolve any perceived conflict before rendering a decision.

## CONCLUSION

This Court finds no error in the ALJ's step five analysis. The DOT is silent on overhead reaching, so no apparent, direct or obvious conflict existed. Moreover, even if there was a conflict, an ALJ may rely on a vocational expert's testimony over the DOT under Eleventh Circuit precedent in *Jones* and *Miller*.

**ACCORDINGLY**, this Court orders that Plaintiff's Motion for Summary Judgement be denied, and in affirming the ALJ's decision, that the Defendant's Motion for Summary Judgement be granted. Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment, [D.E. 10], is **DENIED**. The ALJ's decision is **AFFIRMED**. Defendant's Motion for Summary Judgment, [D.E. 11], is **GRANTED**.

**DONE AND ORDERED** in Chambers of Fort Pierce, Florida this 27th day of September, 2018.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

CC: Erik Berger, Esq. (via CM/ECF NEF)
     Karin D. Wherry, AUSA (via CM/ECF NEF)